(118 App. Div. 69)

## OLMSTED v. OLMSTED et al.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

WILLS—DESIGNATION OF DEVISEE'S LAWFUL ISSUE.

> Where the father of defendants at the time of their birth was the lawful husband of another woman than their mother, but thereafter, in Michigan, obtained a divorce legal in that state, though not in the state of New York, and married their mother, thereby establishing their legitimacy in that state, under Act Mich. March 28, 1881 (Pub. Acts 1881, p. 48, No. 55), they are entitled in New York to take under a devise to "the lawful issue" of their father.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1089.]

Appeal from Special Term, New York County.

Action by Daniel H. Olmsted against Ellen A. Olmsted and others for partition of real estate. From a judgment against defendants John H. and William H. Olmsted, they appeal. Reversed.

See 100 N. Y. Supp. 1083.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Mortimer W. Byers, for appellants.

Charles H. Luscomb, for respondent Daniel H. Olmsted.

Read G. Dilworth, for other respondents.

LAUGHLIN, J. This is an action by one of the sons of Benjamin F. Olmsted, deceased, for a partition or sale of real estate devised by the will of plaintiff's grandfather, Silas Olmsted, to the issue of his two sons, William F. and said Benjamin F., after the death of the survivor of them. The property was sold during the pendency of the action by the executor of said Silas Olmsted, pursuant to a power of sale contained in the will. The decision of the court from which the appeal is taken directs a distribution of the proceeds of the sale between lawful issue of said Benjamin F. and William F. Olmsted, pursuant to the provisions of his will. The court found that the lawful issue of said Benjamin F. Olmsted, entitled to his share, are his sons, the plaintiff and the defendants Clarence E. and Frank S. Olmsted, and his daughter, the defendant Mary O. Olmsted, and that the appellants, who are the children of said Benjamin F. Olmsted and one Sarah Louise Welchman, are not the lawful issue of said Benjamin F. Olmsted, and are not entitled to share in the proceeds of the sale.

The facts are not in dispute. Benjamin F. Olmsted was lawfully married to Mary Jane Olmsted in this state on the 25th day of December, 1850, and the four children in whose favor the decree was made are concededly the lawful issue of that marriage. The matrimonial domicile appears to have been, although it is not so specifically shown, in the state of New York, and the wife remained a resident of this state until her death on the 22d day of January, 1902. It is evident that on or prior to the 28th day of February, 1874, Benjamin F. Olmsted removed to New Jersey; for on that date a ceremonial marriage was performed between him and Sarah Louise Welchman, the mother of the appellants, in that state and the appellants were born to them there. During the summer of 1880 the father and mother of the ap-

pellants and their two children became residents of and permanently domiciled in the state of Michigan. On the 10th day of February, 1882, the circuit court for the county of Wayne, in the state of Michigan, on the application of said Benjamin F. Olmsted, showing that he then was and for more than a year past had been a resident of that state, issued a subpœna to his wife, Mary J. Olmsted, to appear and defend an action brought by him for a divorce under the laws of Michigan, upon the ground of extreme cruelty and desertion. The subpœna was never served personally upon her, and on proof that she was not a resident and could not be found in the state of Michigan, but was a resident of the state of New York, service was ordered to be made upon her by publication, and was thereafter duly made according to the law of the state of Michigan. She was not served personally, and she did not appear in the action; and after the service became complete the court on the 19th day of June, 1882, awarded judgment in favor of the plaintiff for the dissolution of the marriage. Thereafter, and on the 22d day of August, 1882, a ceremonial marriage was performed between the father and mother of the appellants in the state of Michigan, according to the laws of that state, and they thereafter resided together there until her death. In June, 1883, his wife, Mary Jane, commenced an action against him in the Supreme Court in this state for a decree of separation, and praying for alimony and counsel fees. The defendant did not appear on the trial of the action, and judgment was awarded in favor of the plaintiff on the 22d day of January, 1885, separating the parties from bed and board, and awarding her alimony. The judgment roll in that action shows that the defendant was represented by an attorney and counselor at law, on a motion for the sequestration of his property to pay the alimony awarded in the judgment, and from the order entered the defendant, by the attorney who appeared for him on the motion, appealed to the General Term, where it was affirmed in October, 1885. Sarah Louise Welchman died on the 30th day of January, 1900, and Benjamin F. Olmsted died on the 16th day of July, 1905. An act was duly passed by the Legislature of the state of Michigan, approved by the Governor, and became of force on the 29th day of March, 1881, which provides as follows:

"When, after the birth of an illegitimate child, his parents shall intermarry, or without such marriage, if the father shall, by writing under his hand acknowledge such child as his child, such child shall be considered legitimate for all intents and purposes; provided that such acknowledgment shall be executed and acknowledged in the same manner as may be by law provided for the execution and acknowledgment of deeds of real estate, and be recorded in the office of the judge of probate of the county of which such father is at the time a resident." Pub. Acts 1881, p. 48, No. 55.

It is unnecessary to state in detail the steps that were taken in the action by the father of the appellants for divorce in the state of Michigan; or to consider the statutes of that state under which the divorce was granted. It is sufficient to say that according to the laws of that state the court acquired jurisdiction and the divorce was duly granted, and the father of the appellants was competent to contract another marriage. Nor is it necessary to quote the statute or to state the facts with respect to his subsequent marriage to the mother of the appellants.

That marriage was duly solemnized according to the laws of Michigan, and was there valid. By virtue, therefore, of the statute quoted, the appellants thereby became legitimized in the state of Michigan. They contend that their status as the legitimate heirs of their father, having thus been established by the law of the state of their residence and that of their parents, must or should be recognized by the courts of every other state of the Union. There is no doubt but that, as between Mary Jane Olmsted and the father of the appellants, under the decisions of the courts of this state, he remained her husband as long as she lived, and neither the divorce nor subsequent marriage in Michigan would be recognized here. In the case of Miller v. Miller, 91 N. Y. 315, 43 Am. Rep. 669, prior to the enactment of any law in this state legitimizing children born out of wedlock upon the subsequent marriage of their parents, the Court of Appeals gave force and effect to such a statute of Pennsylvania, and said, among other things:

"The lawmaking power can declare a child born to be legitimate or illegitimate, and it is only that power which fixes and determines the status of children born. If born before marriage, the Legislature can remove the disability of its illegitimacy and by its transcendant power can legitimatize and make capable of inheriting the illegitimate child. Blackstone, 4 Inst. 36. If this had been done by an act of the Legislature of the state of New York, no question could arise as to the legitimacy of the plaintiff or his right to inherit. * * * Legitimacy, which was conferred upon the plaintiff by the laws of Pennsylvania, to which reference has been had, constituted a portion of his right, and accompanied him wherever he might reside. Being legitimate in the state of Pennsylvania, he continued so in every state and in every country where he chose to establish his residence."

The declaration of the Court of Appeals in that case that the status of legitimacy, once created, continues in favor of the child thus legitimized wherever he may choose to reside, states the well-recognized rule. Am. & Eng. Encyc. of Law (2d Ed.) vol. 22, p. 1360; Story on Conflict of Laws (7th Ed.) § 93; Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505. The learned counsel for the respondents contend that it is essential, to maintain the dignity of the decree of our own court, that we should refuse to recognize the status of the appellants as fixed by the law of the state of Michigan, because it is based upon a divorce which would not be recognized as valid here. The Appellate Division in the Third Department (Matter of Hall, 61 App. Div. 266, 70 N. Y. Supp. 406), held, in a case not distinguishable on the facts from the one now at bar, that the legitimacy of children, once established under the law of any state or country, should be recognized by the courts of this state. We are of opinion that the conflict in the law of divorce between the different states and territories has gone to the extreme limit, and that the status of the parents as husband and wife in one state and as divorced in another should not be visited upon the innocent offspring of the succeeding marriages. The conflict and confusion has arisen over the fact that the public policy of one state, manifested by the acts of the Legislature, has not favored the granting of divorces on as many grounds as are permitted in other states, and therefore the courts of the one state, while asserting their own jurisdiction to grant divorces without appearance or personal service and upon service by publication, and without inquiring into the

matrimonial domicile, have refused to recognize the decrees of sister states granted on like service and in accordance with the laws of their jurisdiction; and the authority of the courts of one state to refuse to recognize the validity of a divorce in a sister state upon service by publication and without appearance has been sustained by the Supreme Court of the United States, where there was not a matrimonial domicile in the state in which the divorce was granted. The right of the courts of one state to refuse to give full faith and credit to the decisions of the courts of another state, as required by the federal Constitution, is placed by the United States Supreme Court upon the ground that each state is authorized to declare and protect, within its jurisdiction, the status of its own citizens, and that, although according to the foreign law the courts of the sister state obtained jurisdiction, yet the courts of another state may, in the interest of their own citizen, who was a party served only by publication or without the state, and who did not appear, institute an inquiry as to the matrimonial domicile, and, if not found to have been in the state where the decree was obtained, may regard the decree void upon the ground that the court did not obtain jurisdiction either over the person of the defendant or over the subject-matter of the litigation. Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867; Andrews v. Andrews, 188 U. S. 38, 23 Sup. Ct. 237, 47 L. Ed. 366. That rule, however, should not be extended to the children of a subsequent marriage who are legitimate where born or subsequently domiciled.

The material facts are stipulated, and could not be changed upon a new trial. It follows, therefore, that the decree should be modified by providing that the appellants are the legitimate issue of said Benjamin F. Olmsted and entitled to share equally with his other children, and by awarding them costs; and, as so modified, it is affirmed, without costs of this appeal.

PATTERSON, P. J., and CLARKE and SCOTT, JJ., concur.

INGRAHAM, J. (concurring). The question presented in this case is not as to the legitimacy of the children of Benjamin F. Olmsted born after a marriage which was valid in the state of Michigan, but whether two children of Benjamin F. Olmsted, who were concededly illegitimate, were ligitimatized by the subsequent marriage of their parents in the state of Michigan. It is conceded that these children, when born, were illegitimate. It is also conceded that the divorce obtained by Benjamin F. Olmsted in Michigan was not effective to dissolve the marriage relation with his wife, who was a resident of this state; so that in this state Benjamin F. Olmsted had a wife entitled to be recognized as such, and her children the legitimate children of Benjamin F. Olmsted, had a vested remainder in the property to partition which this action is brought. No subsequent marriage of Benjamin F. Olmsted during the life of his wife, unless he was divorced by a judgment which was recognized in this state, could be effective to divest the legitimate children of Benjamin F. Olmsted of the property that had vested in them. Assuming that a legal marriage of Olmsted, when he had capacity to contract a marriage, would legitimatize

his illegitimate children, it seems to me that, where the title to real property in this state is affected, such a marriage must be one which is valid in this state or would be recognized by the laws of this state.

The property in question is property in which Benjamin F. Olmsted had a life estate, with a remainder that vested in his children. When Olmsted removed from this state, he left here a wife and children, in whom this remainder had vested. The action for divorce against his wife was not effective to dissolve the marital relation, and his wife, therefore, remained until her death his only lawful wife, and the issue of that marriage his only legitimate children. During the life of his wife, he was incapable, according to the law of this state, of contracting another valid marriage, and his contracting a marriage which was invalid according to the law of this state could not, I think, have the effect of legitimatizing children who were concededly illegitimate, so as to divest his legitimate children of property that had vested in them. Whether these children would be legitimatized in Michigan by virtue of the law of this state does not seem to be material. The case of Miller v. Miller, 91 N. Y. 315, 43 Am. Rep. 669, presents an entirely different question. There was no impediment to the marriage of the parents in that case, and, the parents of the illegitimate child having contracted a valid marriage, which by the law of their domicile at the time of such marriage legitimatized the child, it was held that the child, having become legitimate according to the law of the domicile of the parents at the time of the marriage, would here be regarded the same as if born after the marriage. There was no question in that case of divesting the children of one of the parents of the illegitimate child of property that had vested before the alleged marriage; the question arising as to real property acquired subsequent to the alleged marriage by the father as to which he died intestate.

It seems to me that as the parents of the appellants could contract no lawful marriage which would be recognized in this state at the time of the alleged marriage, the effect of which it is claimed legitimatized the appellants, the appellants were not legitimatized in this state: and I think, therefore, the judgment was right, and should be affirmed.